**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

PAUL ESCALANTE,

                             Petitioner,

      - v -                                   Civ. No. 9:06-CV-1506
                                                                    (LEK/RFT)

JOSEPH SMITH, *Superintendent*,
*Shawangunk Correctional Facility*,

                             Respondent.

**APPEARANCES:**                                      **OF COUNSEL:**

ROBERT N. ISSEKS, ESQ.
Attorney for Petitioner
6 North St.
Middletown, NY 10940

HON. ANDREW M. CUOMO                         LISA E. FLEISCHMANN, ESQ.
Attorney General for the State of New York       Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

      Petitioner Paul Escalante brings this Petition for a Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, challenging his confinement by claiming that (1) his guilty plea was involuntarily and unintelligently entered into, and (2) he received ineffective assistance of counsel. Dkt. No. 1, Pet. For the reasons that follow, it is recommended that the Petition be **denied**.

**I. BACKGROUND**

      On August 4, 2000, Petitioner was arrested under suspicion of having participated in the

murder of Edward Pastore, who was killed on July 17, 2000. On August 10, 2000, Petitioner was indicted, along with two other individuals, on one count of each of the following crimes: Murder in the Second Degree, Burglary in the First Degree, Burglary in the Second Degree, Robbery in the First Degree, Criminal Use of a Firearm, and Conspiracy in the Fourth Degree. Dkt. No. 8, Ex. B, State Ct. R. on Appeal, (hereinafter "R."), Indictment at pp. 4-9.[1] The Indictment alleged that Petitioner and his cohorts caused the death of Pastore during the commission of a robbery and burglary. *Id.* On August 17, 2000, Petitioner appeared for arraignment with his assigned attorney, Scott Clippinger, Esq. R., Arraignment & Plea Hr'g Tr., dated Aug. 17, 2000, at pp. 15-31. At the arraignment, Petitioner pled guilty to Murder in the Second Degree in satisfaction of all charges and in exchange for a minimum sentence of fifteen (15) years to life. *Id.* at pp. 22-30. As part of the deal, Petitioner agreed to cooperate with the district attorney in the prosecution of other suspects/defendants. *Id.*

Prior to sentencing, Petitioner released appointed counsel Scott Clippinger and retained the services of Rebecca L. Wittman, Esq. On December 4, 2000, Ms. Wittman filed a motion seeking to withdraw Petitioner's guilty plea pursuant to N.Y. CRIM. PROC. LAW ("CPL") § 220.60(3), based on involuntariness of the plea and ineffective assistance of counsel. R., Mot. to Withdraw Plea, at pp. 31-44. The trial court denied Petitioner's motion. R., Sentencing Hr'g Tr.,[2] dated Dec. 18, 2000, at pp. 47-59. At Petitioner's sentencing hearing, the district attorney stated that Petitioner had failed to uphold his end of the plea bargain by refusing to testify before the grand jury against other

---

[1] The pages constituting the combined State Court Record on Appeal have been numbered 1-82. *See* Dkt. No. 8. For ease of reference, we will refer to these page numbers when citing to documents in the State Court Record.

[2] The trial court considered and denied the motion to withdraw before sentencing Petitioner in the same proceeding.

defendants. *Id.* at pp. 59-72. Petitioner was thereafter sentenced to an indeterminate sentence of twenty (20) years to life incarceration. *Id.* at p. 78.

Petitioner pursued a direct appeal before the New York State Supreme Court Appellate Division, Third Department, on the following grounds: (1) his plea allocution did not establish his guilt of second-degree murder; (2) ineffective assistance of counsel; and (3) his guilty plea was not knowing, intelligent, or voluntary. Dkt. No. 8-2, Pet'r App. Div. Br. The Appellate Division denied Petitioner's appeal, affirming his conviction. *People v. Escalante*, 792 N.Y.S.2d 253 (N.Y. App. Div. 3d Dep't 2005). Petitioner sought leave to appeal to the New York Court of Appeals which was denied. *People v. Escalante*, 5 N.Y.3d 788 (N.Y. 2005).

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello*, 460 F.3d 238 (2d Cir. 2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679,

at *3 (S.D.N.Y. Aug. 28, 2003). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

### B. Ineffective Assistance of Counsel

Petitioner claims that his first attorney, Mr. Clippinger, provided ineffective assistance of counsel. Pet. at pp. 13-19. Specifically, Petitioner claims that Mr. Clippinger failed to properly investigate Petitioner's case after his appointment, and therefore improperly advised Petitioner to plead guilty.[3] Petitioner alleges that his

> assigned counsel spoke with him *only twice*, with the total time being *less than 4 hours*. There is no evidence that Clippinger conducted any investigation, arranged

---

[3] In making his ineffective assistance of counsel argument, Petitioner also raises the following unrelated claims: (1) he was not provided with a copy of his felony complaint as required by CPL § 180.10(1); (2) he was not provided a prompt pre-trial hearing as required by CPL § 180.10(2); (3) he was arraigned without counsel and no adjournment was called in order for Petitioner to obtain counsel and communicate with his family; and (4) he was not advised of his right to testify at the grand jury. Dkt. No. 1, Pet'r Mem. of Law at pp. 14-15. To the extent Petitioner intended to raise these state-procedure based claims as independent bases for *habeas* relief, none have been properly exhausted, and should therefore be denied.

> for any interviews with potential witnesses, reviewed the co-defendants' statements, visited the crime scene or informed Petitioner of his right to testify at the Grand Jury. Nor did Clippinger seek to suppress the oral statement that was attributed to Petitioner; instead, Clippinger had Petitioner *sign the statement after his plea*.
>
> The failure to investigate is so fundamental to the effective assistance of counsel that it cannot be rationalized away with a post hoc construction of Clippinger's strategy.

Pet'r Mem. of Law at p. 18 (emphases in original, citations omitted).

The Appellate Division rejected Petitioner's claims of ineffective assistance of counsel, stating that

> while [Escalante] now contends that his counsel was ineffective for failing to independently investigate the charges against him and acting too hastily in negotiating the plea agreement, he offers no explanation of how he would have benefitted from such an investigation or how his counsel's representation prejudiced him. In order to show prejudice, defendant would have to establish what evidence would have been discovered by a more thorough investigation and that it would have caused him to reject the plea offer and proceed to trial.

*People v. Escalante*, 792 N.Y.S.2d at 985-86.

We find that the Appellate Division's decision was not unreasonable and did not constitute a clearly erroneous application of established constitutional standards. To establish ineffective assistance of counsel, a *habeas* petitioner must show 1) counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and 2) prejudice, i.e., there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688 & 694 (1984) (cited in *Bell v. Cone*, 535 U.S. 685, 695 (2002)); *see also Aeid v. Bennett*, 296 F.3d 58, 62-63 (2d Cir. 2002); *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997); *Rattray v. Brown*, 261 F. Supp. 2d 149, 157 (E.D.N.Y. 2003).[4] In determining the reasonableness of counsel's conduct courts must "indulge a strong presumption that counsel's conduct falls within the wide range of

---

[4] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]'" 529 U.S. 362, 391 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001).

reasonable professional assistance[.]" *Strickland v. Washington*, 466 U.S. at 689.

The *Strickland* test applies to a defendant who claims to have pleaded guilty as a consequence of being provided ineffective assistance. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Thus, to succeed on this claim, Petitioner must show that (1) the advice to plead guilty fell below an objective standard of reasonableness, and (2) but for such deficient advise, there is a reasonable probability that he would not have so pled.

Here, as the Appellate Division noted, Petitioner has failed to make any showing that had Mr. Clippinger more thoroughly investigated his case, there is a reasonable probability that he would not have pleaded guilty. Instead, Petitioner focuses on the small amount of time Mr. Clippinger spent with Petitioner prior to his plea and the modest case file that Clippinger turned over to Ms. Wittman upon her retention as Petitioner's representative.[5] There is no allegation as to how further investigations could have resulted in a reasonable probability that Petitioner would not have pleaded guilty, nor is there any indication as to the relative strength of the government's case against Petitioner. *See, e.g., Matura v. United States*, 875 F. Supp. 235, 237 (S.D.N.Y. 1995) ("Petitioner's bald assertion that counsel should have conducted a more thorough pretrial investigation fails to overcome the presumption that counsel acted reasonably.").

In that respect, although it is not present on the record before us, it appears that Petitioner made a confession at some point prior to Mr. Clippinger's appointment as his counsel. *See* R., Sentencing Hr'g Tr. at p. 57 (district attorney noting that Petitioner "confessed to the crime"); *see*

---

[5] Petitioner asserts that the following documents were included in the case-file that was provided to Ms. Wittman by Mr. Clippinger: a newspaper article, a letter of assignment from the County Court which included the felony complaint and Notice of Arraignment, a letter from the court concerning a television station's request to videotape and response, a copy of the Indictment with an Affidavit of Service from the district attorney and a Notice of Intent, and a copy of Petitioner's voluntary statement. Pet'r Mem. of Law at pp. 15-16.

*also* Pet'r Mem. of Law at p. 18 (alleging that Clippinger did not "seek to suppress the oral statement that was attributed to Petitioner"). Petitioner cites Clippinger's failure to move to suppress his confession as a basis for ineffective assistance, however, because Petitioner has failed to make any showing that such a suppression motion would have been meritorious, we cannot say that Clippinger's decision and/or failure to make such a motion constituted ineffective assistance of counsel. *United States v. Matos*, 905 F.2d 30, 32 (2d Cir. 1990) ("In order to show ineffective assistance for the failure to make a suppression motion, the underlying motion must be shown to be meritorious.") (*citing Kimmelman v. Morrison*, 477 U.S. 365, 375-76 (1986)).

In sum, there is no evidence on the record to suggest that had Mr. Clippinger spent more time consulting with Petitioner and investigating the case, or had he moved to suppress Petitioner's inculpatory statement, there is a reasonable probability that Petitioner would not have pled guilty. Therefore, the Appellate Division's decision that Petitioner failed to meet his burden of showing prejudice with respect to this claim was not an unreasonable application of the law. *See, e.g., Miller v. New York,* 275 F. Supp. 2d 294, 298-99 (E.D.N.Y. 2003) ("Petitioner's conclusory claim that counsel was ineffective because he failed to investigate or file pretrial motions could not merit granting of the writ because petitioner has failed to suggest any way in which further investigation or motion practice would have provided any benefit to petitioner's defense.").

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court has held that federal district courts need not address both components if a petitioner fails to establish either one. *Strickland v. Washington*, 466 U.S. at 697. In particular, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*

Therefore, it is recommended that this claim be **dismissed**.

### C. Plea Bargain

Petitioner claims that he did not knowingly, intelligently, or voluntarily enter into the plea agreement. Pet. at pp. 7-13. Petitioner alleges that: (1) he was never specifically asked if he desired to plead guilty to second-degree murder; (2) the plea allocation contained no "direct admission by Petitioner that Pastore was shot" or that "there was a homicide committed during the course of the robbery;" (3) he testified at the allocation that he did not agree to split the proceeds of the robbery and that he never received any such proceeds; and (4) he did not have an adequate opportunity to consult with his attorney and his attorney failed to adequately investigate the case, rendering his plea involuntary. *Id.*

The first three grounds raised essentially allege that although Petitioner pleaded guilty, he did not specifically allocute to all of the elements of Murder in the Second Degree. Petitioner raised this claim regarding the adequacy of his plea allocation on direct appeal. Pet'r App. Div. Br. at pp. 7-9. Addressing such claim, the Appellate Division stated:

> Defendant, for the first time on this appeal, challenges the factual sufficiency of his plea allocation. His motion to withdraw his plea did not preserve this issue because it was not based upon this specific ground . . . . Defendant's failure to raise the issue deprived the County Court of the opportunity to address any alleged deficiency. . . . Furthermore, the narrow exception to the preservation doctrine does not apply here, as we find nothing in defendant's allocution that would negate an essential element of the crime.

*People v. Escalante*, 792 N.Y.S.2d at 984-85.[6]

Thus, the Appellate Division denied Petitioner's sufficiency of the allocution claim because it was unpreserved. Federal *habeas* review is prohibited if a state court rested its judgment on a state

---

[6] The Appellate Division went on to state that were it to consider the merits of Petitioner's claim, it would find nothing improper with the sufficiency of the allocution.

law ground that is "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 728 (1991) (citations omitted); *see also Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995). "This rule applies whether the state law ground is substantive or procedural." *Coleman v. Thompson*, 501 U.S. at 729 (citation omitted). The independent and adequate state ground doctrine is jurisdictional, thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of federal claims in a *habeas* petition. *Harris v. Reed*, 489 U.S. at 264 n.10.

In this case, the Appellate Division's dismissal of this claim was clearly on a state procedural ground, namely, failure to preserve. Under New York law, in order to preserve a challenge to the factual sufficiency of a plea allocution, a criminal defendant must either make a motion to withdraw the plea pursuant to CPL § 220.60, or make a motion to vacate the judgment under CPL § 440.10. *People v. Lopez*, 71 N.Y. 2d 662, 665-66 (1988). In this case, Petitioner filed a motion to withdraw the plea, but did not specifically raise insufficiency of the plea allocution. R., Pet'r Mot. to Withdraw Plea at pp. 31-45 (raising only ineffective assistance and involuntary plea as grounds for granting the motion). Thus, the Appellate Division's decision regarding Petitioner's sufficiency of the allocution was based on an independent and adequate state ground and therefore those claims are procedurally barred.

In any event, these claims related to the plea allocution are without merit. At Petitioner's plea hearing, the Honorable W. Howard Sullivan, Chenango County Court Judge, began by relating all the charges brought against Petitioner. R., Arraignment and Plea Hr'g Tr. at p. 16. The court

proceeded to read the first count of the Indictment, Murder in the Second Degree under N.Y. PENAL LAW § 125.25 (3), the statute that articulates New York's felony-murder rule,[7] stating that

> on or about July 17th, 2000, in the Town of Norwich, County of Chenango and State of New York, . . . [Petitioner and the other defendants,] during the commission of a robbery and burglary and in the course of and in furtherance of such crimes and immediate flight therefrom did cause the death of Edward Pastore, not a participant in the crime, by shooting him in the chest with a shotgun.

*Id.* at pp. 16-17 (internal quotation marks omitted).

After conferring with Petitioner and the district attorney about certain outstanding detainer warrants against Petitioner, Mr. Clippinger, Petitioner's then-assigned counsel, offered Petitioner's guilty plea to the crime of second-degree murder

> with the understanding and on the condition that the sentence of the Court would be the minimum allowable under the statute, a sentence of 15 to life, with the further understanding that this sentence will be imposed only if Mr. Escalante cooperates with the District Attorney's office and provides truthful testimony with regard to the incidents prior to and after this alleged incident on . . . July 17th, 2000, and also would be providing information with regard to persons who are not yet in custody and not yet been charged. It is also understood that part of this plea disposition is a robbery that has been alleged to have occurred on Jones Avenue. I'm not sure of the date. There have been some allegations in the paper with regard to that and prior sentences that have been imposed with agreed-upon testimony, and that Mr. Escalante would be, this would be taken care of as part of that. He wouldn't face any prosecution, as a result of that plea with regard to that charge.

*Id.* at pp. 18-20.

The district attorney then confirmed to the court that if Petitioner cooperated with law enforcement agencies, he would recommend a sentence of fifteen (15) years to life incarceration as per the terms of the plea bargain. Mr. Clippinger stated that in addition to the full minimum sentence and any future charges related to a robbery that occurred on Jones Avenue,

> there would be a recommendation from the Chenango County District Attorney to any prosecuting offices in the State of Texas that any sentence for a non-violent

---

[7] N.Y. PENAL LAW § 125.25(3) provides that a person is guilty of Murder in the Second Degree if while in the course of committing certain specified felonies, including robbery and burglary, he causes the death of another person.

>   offense in that jurisdiction be served concurrently with any sentences in New York
>   State. We understand that that does not bind the authorities in Texas, but the District
>   Attorney would make that recommendation.

*Id.* at pp. 20-21.

At that point, Judge Sullivan questioned Petitioner about his physical and mental health, to which no significant problems were reported. Judge Sullivan instigated the following exchange:

>   Q.   Have you had an opportunity to discuss this with Mr. Clippinger?
>   A.   Somewhat.
>   Q.   Has he been able to answer your questions for you?
>   A.   Pretty much.
>   Q.   Is there anything that you don't understand? We'll stop right here if there's something you don't understand you'd like to ask Mr. Clippinger, I'll give you that opportunity. Is there anything you'd like to talk to him about?
>   A.   Can I ask him?
>
>   THE COURT:       Sure.
>           (Whereupon the defendant conferred with his attorney.)
>
>   Q.   Mr. Escalante, do you have any other questions for your attorney?
>   A.   No.
>   Q.   Are you satisfied with Mr. Clippinger's services?
>   A.   Yes, sir.
>   Q.   Have you had any alcoholic beverages or any controlled substances or any drugs of any kind within the past 24 hours?
>   A.   No, sir.
>   Q.   Do you understand that prior to entering this plea, you have the right to a trial by jury?
>   A.   Yes, sir.
>   Q.   At that trial, it would be incumbent upon the District Attorney's office to prove each and every element of the offense with legal proof beyond a reasonable doubt. Do you understand that?
>   A.   Yes, sir.
>   Q.   Should they fail to do that, then you would be found not guilty?
>   A.   Yes, sir.
>   Q.   Do you understand that at such trial, you'd have the right to confront any witnesses against you, you'd have the right to subpoena witnesses on your own behalf and you also would have the right to remain silent if you choose?
>   A.   Yes, sir.
>   Q.   Do you understand that you'll be giving up all of these rights in the event you enter a plea?
>   A.   Yes, sir.

> Q. You also understand that you would be required to sign a waiver of appeal at the time of sentencing, you understand that?
> A. Yes, sir.
> Q. Has anyone promised you anything in exchange for your plea other than what's been discussed here today by your lawyer and Mr. McBride?
> A. Not to my knowledge.
> Q. Do you understand that?
> A. Yes, sir.
> Q. Has anyone forced you in any way whatsoever, Mr. McBride, Mr. Clippinger, any law enforcement officers or any people, any person whatsoever to enter this arrangements against your own free will?
> A. No, sir.
> Q. You're doing it freely and voluntarily?
> A. Yes, sir.
> Q. The first count of the indictment I read to you. I want you to tell me what happened, what you did on July 17th.
> A. From the morning?
> Q. I need to cover the elements. Start the day before, what your involvement in this event was.

*Id.* at pp. 23-25.

At that point, Plaintiff described his involvement in the crimes as follows: On July 17th, 2000 he met with Xavier Valentine at a hotel in Binghamton where they discussed the robbery. Petitioner knew that Valentine was going to have a gun or a weapon on him during the robbery. Petitioner furnished Valentine with a layout of the victim's house, and picked up tape, garbage bags, and other supplies and gave them to Valentine right before he went to commit the robbery. Petitioner also furnished Valentine with a shotgun. Earlier, Petitioner had informed Valentine, who was from Staten Island, that Pastore, the victim, had money and drugs in his house. After the robbery, Valentine told Petitioner that he shot Pastore. *Id.* at pp. 25-29. The court accepted Petitioner's plea "in full satisfaction of the charges that [were] pending with the understandings set forth on the record." *Id.* at p. 29.

Returning to Petitioner's argument that the plea was defective, the Second Circuit has held that "due process does not mandate a factual basis inquiry by state courts" to create a valid plea.

*Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984) (per curiam) (citations omitted) (*cited in Hill v. West*, 2009 WL 483168, at *15 (W.D.N.Y. Feb. 25, 2009)). A factual basis inquiry is "merely one way of satisfying the constitutional requirement that a plea be voluntary and intelligent." *Id.* Furthermore, there is no constitutional requirement that each element of a crime be specifically pleaded to at a plea hearing, rather, it is sufficient if the defendant had adequate notice of the charges against him and the plea is voluntary. *See Maltsev v. Albany County Probation Dep't*, 303 Fed. Appx. 973 (2d Cir. 2008) (unpublished opinion) (*citing Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) for the proposition that a judge need not "'explain the elements of each charge to the defendant on the record'" as long as the defendant has notice of the charge through his counsel). Thus, Petitioner's claims that he did not directly admit that Pastore was shot or that a homicide was committed are without constitutional significance.

Likewise, Petitioner's claim that he did not agree to split the proceeds of the robbery and never received any such proceeds did not infect his plea in any way. First, Petitioner admitted that he furnished Valentine with a shotgun right before the robbery and that he informed Valentine about the layout of the victim's home. Thus, Petitioner clearly admitted to participating in the robbery (which became felony-murder) as an accomplice. *See* N.Y. PENAL LAW § 20.00 (a person is criminally liable for a crime committed by another when he "intentionally aids such person to engage in such conduct"). His statements during the plea hearing that he did not have an agreement to split the proceeds of the robbery and did not in fact receive any such proceeds were not inconsistent with the underlying elements of second-degree murder.

Petitioner's claim that he was never specifically asked during his plea hearing if he desired to plead guilty to second-degree murder, while true, does not state a valid basis for *habeas* relief

*-13-*

because Petitioner clearly indicated his desire to plead guilty to that crime. At the beginning of the plea hearing, Petitioner's counsel clearly indicated that he intended to "enter a plea of guilty to the first count of the indictment." R., Arraignment and Plea Hr'g at pp. 18-19. The trial court referred to the first count of the Indictment before asking Petitioner to recount his involvement in the crimes committed. *Id.* at p. 25. In sum, there is no indication on the record that Petitioner was not aware that he was pleading guilty to the crime of second-degree murder. Therefore, Petitioner's claims concerning the adequacy of the plea should be **dismissed**.

Petitioner's final collateral attack on the voluntariness of the plea is that he did not have an adequate opportunity to consult with his attorney and that his attorney failed to adequately investigate the case. We addressed the latter claim earlier in the context of Petitioner's ineffective assistance of counsel claim and found it to be without merit. The same reasoning applies in present context of Petitioner's voluntariness, and with equal force. Without repeating that discussion, we note that nothing in the plea colloquy evidences a lack of communication between Petitioner and his counsel. To the contrary, prior to the start of the plea colloquy, Petitioner and his counsel conferred about his plea with the blessing of the court, and did so again at a later point during the plea hearing. When asked by the Court, Petitioner stated that he was satisfied with Mr. Clippinger's services.

Thus, we do not find that the Appellate Division's ruling that Petitioner's "plea was knowingly, intelligently and voluntarily made" was an unreasonable application of federal constitutional law. *People v. Escalante*, 792 N.Y.S.2d at 255. Therefore, we recommend that the Petition be **denied**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000) *cert. denied* 531 U.S. 873 (2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:  May 7, 2009
       Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge